IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| SERVICE CORPORATION INTERNATIONAL, | ) ) ) |
| *Plaintiff,* | ) ) No. 19 C 1960 |
| v. | ) ) Judge Virginia M. Kendall |
| STERICYCLE, INC., | ) ) |
| *Defendant.* | ) ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Service Corporation International ("SCI"), in its amended complaint (Dkt. 27), alleges that its subsidiaries contracted with Defendant Stericycle, Inc. for Stericycle to provide medical waste disposal services. Despite entering into a fixed-price agreement, SCI says, Stericycle raised its prices for reasons not authorized by the contract. SCI now brings this action against Stericycle for breach of contract, unjust enrichment, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

Stericycle has moved to dismiss SCI's amended complaint, both for lack of prudential standing and failure to state a claim. (Dkt. 36). Because this Court agrees that SCI has not sufficiently alleged that it has the right to bring claims personal to its subsidiaries, the Court grants the motion to dismiss. The Court also concludes

that, even if SCI can show that it has prudential standing, the complaint, as it stands now, fails to state a claim on any count.

## BACKGROUND

The following factual allegations are taken from SCI's amended complaint and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

SCI operates funeral homes across the United States. (Dkt. 27 ¶ 3). Between 2010 and 2016, SCI acquired Keystone America, Inc., Stewart Enterprises, and Alderwood Group, LLC, and all of the subsidiaries of each organization (collectively, "the subsidiaries"). (*Id.* at ¶¶ 13–15). SCI alleges that, at some point, it was assigned the claims of each organization and its subsidiaries. (*Id.* at ¶¶ 13–15).

Stericycle is a medical waste disposal company. (*Id.* at ¶ 3). SCI alleges that Stericycle contracted with the subsidiaries using a form contract called the "Steri-Safe Service Agreement." (*Id.* at ¶¶ 22, 58). The Steri-Safe Service Agreement provides for a fixed price for services. (*Id.* at ¶¶ 22–23). The Agreement includes terms and conditions, which SCI alleges were often provided in "illegible" copies with "reduced font size." (*Id.* at ¶ 24). The terms and conditions provide that "Stericycle reserves the right to adjust the contract price to account for operational changes it implements to comply with documented changes in the law, to cover increases in the cost of fuel, insurance, residue disposal, or to otherwise address cost escalation." (*Id.* at ¶ 26).

SCI alleges that Stericycle did not, in fact, limit its price increases to those implemented due to changes in the law or due to cost escalation. (*Id.* at ¶ 31). Instead, SCI says, Stericycle imposed improper "automatic price increases" or "APIs" not tied to the reasons for price increases set forth in the Agreement. (*Id.* at ¶¶ 31–33, 36). Stericycle used an electronic financial reporting system called "Tower" (later "SteriWorks") to apply an unjustified, periodic 18% price increase to the subsidiaries. (*Id.* at ¶¶ 34, 38). SCI alleges that Stericycle targeted the subsidiaries and other smaller customers for APIs because they were less sophisticated and had smaller (or no) legal or accounting departments. (*Id.* at ¶ 37). When customers called Stericycle to complain about price increases, its customer complaints and retention departments provided false justifications or used other tactics to convince the customers to accept the increases or pay as much of them as possible. (*Id.* at ¶¶ 44–48).

SCI cites a class-action settlement in this district pertaining to Stericycle's API practice. (*Id.* at ¶ 59). SCI states that Stericycle represented in that litigation the subsidiaries were members of the class who contracted with and were overcharged by Stericycle between March 2003 and October 2017. (*Id.* at ¶ 59). SCI states that it did not know, prior to the class settlement in 2017, that the subsidiaries had been overcharged by Stericycle. (*Id.* at ¶ 68). The subsidiaries opted out of the class settlement (*Id.* at ¶ 61), and SCI has now brought this action alleging breach of contract, unjust enrichment, and violation of the ICFA.

## LEGAL STANDARD

Stericycle moves to dismiss due to, among other reasons, lack of prudential standing, which is not jurisdictional and is assessed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 689 (7th Cir. 2015); *VYSE Gelatin Co. v. Hicks*, No. 17-CV-2937, 2018 WL 3970266, at *2 (N.D. Ill. Aug. 20, 2018). To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

**A. Standing**

To have Article III standing, "a litigant must 'prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision.'" *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691–92 (7th Cir. 2015) (quoting *Hollingsworth v.*

*Perry*, 570 U.S. 693, 704 (2013)). In addition to this jurisdictional understanding of standing, there is also the doctrine of prudential standing. Although a party may allege an injury caused by a particular defendant, that party lacks prudential standing to bring suit when the injury arose based on the legal rights of a third party. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012) ("[I]n general, the plaintiffs must assert their own legal rights and interests, and cannot rest their claims to relief on the legal rights or interests of third parties."). Stericycle argues that SCI lacks prudential standing to sue because its claims rest on the legal rights of its subsidiaries, and SCI has not sufficiently pled an assignment of the right to sue from the subsidiaries. Were there a valid assignment, SCI would have both Article III and prudential standing and would be the real party in interest. S*ee also* Fed. R. Civ. P. 17 (a); *G & S Holdings*, 697 F.3d at 541 (noting that the question of prudential standing "is similar to the requirement of Federal Rule of Civil Procedure 17 that every action must be prosecuted in the name of the real party in interest").

Assessment of a prudential standing challenge is similar to assessment of a facial standing challenge under Article III. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009) ("Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction. . . the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion."); *VYSE Gelatin Co.*, No. 17-CV-2937, 2018 WL 3970266, at *2 ("Because the documents that Defendants rely on to argue that Plaintiff lacks prudential standing are attached to Plaintiff's

complaint, the fact that the Court is evaluating Defendants motion under Rule 12(b)(6) as opposed to Rule 12(b)(1) has no effect on the outcome of Defendants' motion."). "At the pleading stage, it is normally not difficult to pass the standing bar," *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 624 (7th Cir. 2017), and Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." That being said, the allegations here are insufficient even under a low bar. SCI merely states, in the passive, that it "has taken an assignment of all of its subsidiaries claims" (Dkt. 27 ¶¶ 13–15) and that it has "acquired by assignment all claims of its Subsidiaries" against Stericycle. (Dkt. 27 ¶ 56). These allegations are too vague here, where multiple layers of assignments may be involved. *See e.g., Llano Fin. Grp., LLC v. Lendzion*, No. 15 C 7091, 2016 WL 930660, at *4 (N.D. Ill. Mar. 11, 2016) (noting that the Court could not determine whether there had been a proper assignment through a chain of multiple parties given "the paucity of factual information on this point in the complaint").

While SCI names the organizations whose rights it purportedly acquired and what those rights are, questions pertaining to SCI's standing remain unanswered. Who, exactly, assigned those rights to SCI? Was it the subsidiaries themselves, or their parent organizations who SCI acquired, Stewart Enterprises, Keystone America, and Alderwood Group? The complaint is not clear on this point and suggests it may have been the parent organizations, given that the allegations regarding the assignment are made alongside the description of the acquisition of the parent organizations. The same is true of SCI's response to the motion to dismiss. *See e.g.,*

Dkt. 43 at 9 (stating that SCI provided information about the date and format of the assignment by referencing the acquisitions and noting vaguely that the assignments were made "after the acquisitions"). As Stericycle points out, if it was the parent organizations who made the assignment, it is not clear from the complaint whether they had the right to assign the claims of their subsidiaries to SCI.

While the Court must accept the allegations of the complaint as true, all that has been alleged is that SCI has "taken" or "acquired" an assignment. This means nothing without knowledge of how the assignment was made and who made it. And although SCI alleges that it is the "proper party in interest" here (Dkt. 27 ¶¶ 13–15), the Court need not accept this conclusory legal statement without facts to support it.

Stericycle is not demanding that SCI "attach or quote the assignments," *Oak Brook Surgical Ctr. v. Aetna*, No. 10 C 5580, 2011 WL 933955, at *1 (N.D. Ill. Mar. 16, 2011), which may not be required for notice pleading. But it does argue that SCI must sufficiently allege the chain of assignments in order to establish its own right to sue, and this Court agrees.

It may be that SCI has validly acquired the rights of the subsidiaries to sue Stericycle. On the face of the amended complaint, however, SCI "has failed to plead with the clarity necessary to establish that it is actually the assignee of the claims it alleges and that every link in the chain of assignments validly transferred the right of action." *Llano Fin. Grp.*, No. 15 C 7091, 2016 WL 930660, at *4. Given this failure and the dearth of information provided in the amended complaint, SCI has not borne its burden in sufficiently alleging that it has standing. SCI should amend its

complaint to cure this defect or join the real party in interest if the right to sue is held by another party. *See* Fed. R. Civ. P. 17(a)(3).

### B. ICFA Claim

Because the issue of prudential standing is correctable, the Court also addresses the merits of the amended complaint to save time and resources. The Court turns first to Count II, brought under the ICFA, 815 ILCS § 505/2. Stericycle has posited multiple reasons why SCI has failed to state a viable ICFA claim.

First, Stericycle argues, the ICFA requires an Illinois nexus which SCI has failed to plead. In *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801 (Ill. 2005), the Illinois Supreme Court held that the ICFA does not have extraterritorial effect and applies to nonresident claimants only when the circumstances of the disputed transaction occurred "primarily and substantially" in Illinois. *Id.* at 854. Whether a putative nonresident plaintiff may bring an ICFA claim is not governed by a "bright-line rule" but rather requires a "highly fact-bound inquiry" in which no single factor is dispositive. *See Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 396 (7th Cir.2009). In particular, the Illinois Supreme Court has considered: (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed. *See The Clearing Corp. v. Fin. and*

*Energy Exch. Ltd.*, No. 09 C 5383, 2010 WL 2836717, *6 (N.D.Ill. July 16, 2010) (citing *Avery*, 835 N.E.2d at 854–855).

SCI has alleged that Stericycle has its principal corporate offices in Illinois, the Steri-Safe Service Agreement has a choice-of-law provision requiring the application of Illinois law, and the Tower/SteriWorks financial software was developed in and operated out of Illinois. (Dkt. 27 ¶¶ 17, 25, 62). SCI references additional ties to Illinois in its response to the motion to dismiss, namely that Stericycle's customer service and call centers that fielded customer calls were located in Illinois. (Dkt. 43 at 15). It also suggests that the contracts with Stericycle were executed in Illinois and payments were sent to Illinois. *Id.* at 16. But SCI did not plead any facts to support these assertions in its complaint.

The office location, choice-of-law provision, and operation of the software are insufficient to bring a claim under the ICFA. The allegations in the amended complaint are very similar to those in *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831 (N.D. Ill. Aug. 23, 2012). In *Haught*, this Court held that a choice-of-law provision and the fact that a business's corporate offices were located in Illinois were insufficient to confer nonresident standing under the ICFA. *Id.* at *4; see also Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 537 (7th Cir. 2011) ("*Avery* holds that a choice-of-law clause is not dispositive, because a claim under the Consumer Fraud Act is independent of the contract" although it is "a mark in plaintiffs' favor"); *Crichton*, 576 F.3d at 397 (stating that location of home office was not enough when contract was entered into and carried out elsewhere). Nor is it sufficient that the

financial software was developed in and operated out of Illinois, given that SCI has made no allegations that inflated invoices were received in Illinois or that any other unfair or deceptive activity took place in Illinois. *See Avery*, 835 N.E.2d at 855 (that a scheme to defraud "disseminated" from the defendant's headquarters in Illinois is insufficient to confer nonresident standing to sue under the ICFA). Even assuming SCI has prudential standing, it has not properly stated a claim under the ICFA because it has failed to allege that the conduct at issue here occurred "primarily and substantially" in Illinois. *See Avery,* 835 N.E.2d at 854.

The Court also addresses briefly the other arguments pertaining to the ICFA claim. Stericycle alleges that SCI's ICFA claim is impermissibly duplicative of its breach of contract claim. "A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery*, 835 N.E.2d at 844; *see also Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) ("When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract."). Here, the amended complaint repeatedly makes reference to the breach of contract. *See, e.g.*, Dkt. 27 ¶ 89 ("Defendant engaged in an unfair and deceptive trade practice by imposing automatic price increases."); *id.* at ¶ 92 ("Defendant concealed that it used an automated price increase algorithm. . . ."); *id.* at ¶ 97 ("The SCI Subsidiaries paid higher fees than they should have under their contracts with Defendant because of Defendant's APIs."). The additional allegations SCI makes are premised on the fact that a certain action was taken in furtherance of

collecting unauthorized APIs, *see, e.g., id.* at ¶ 91 (alleging, among other things, that Stericycle lied about the reasons for the APIs, failed to respond to complaints about the APIs, did not providing a billing history on request, etc.), and are the same as those alleged in the breach of contract claim, *id.* at ¶ 85 (alleging that Stericycle used illegible forms, burdensome cancellation provisions, concealed reasons for the APIs, and generally adopted practices designed to maximize collection of APIs). To the extent that any of these allegations are based on acts distinct from the underlying implementation of APIs, SCI should untangle them from the underlying contract claim if it chooses to amend its complaint, as "repeated references to simple breaches of contractual promises" may not be used to support ICFA claims. *Avery*, 835 N.E.2d at 844.

Stericycle also argues that SCI is not a consumer under the ICFA, an argument it apparently abandoned in its reply. As SCI points out, ICFA also applies under the "consumer nexus" test, if the costs resulting from the fraud were passed onto customers. *See Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004). This is true, but SCI has not alleged a consumer nexus. Given that SCI must amend its complaint regardless, if it chooses to replead its ICFA claim, it may wish to allege additional facts to address this potential defect.

Stericycle's last argument pertaining to the ICFA claim is that SCI has failed to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 596 n. 80 (7th Cir. 2017) ("ICFA claims are evaluated under Rule 9(b)'s heightened pleading standard.").

Pursuant to Rule 9(b), a plaintiff must "describe the who, what, when, where, and how of the fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted). As the foregoing analysis makes clear, the amended complaint needs substantial revisions to sufficiently state a claim. At this point, therefore, it would not be fruitful for the Court to address whether the amended complaint is pleaded with particularity.

### C. Breach of Contract Claim

Operating under the assumption that SCI can show that it has prudential standing, the Court addresses Stericycle's argument that SCI has failed to state a claim for breach of contract in Count I. "Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotation marks omitted).

SCI has stated that each of its subsidiaries entered into a form Steri-Safe Service Agreement, that the agreement provided for a fixed price that could only be increased under certain circumstances, that Stericycle increased prices for reasons not provided in the contract, that SCI paid the fees invoiced to them, and that SCI overpaid what was owed under the contract as a result. (Dkt. 27 ¶¶ 58, 62, 64, 79, 81). SCI even quotes relevant portions of the agreement. (*See, e.g.*, *id.* at ¶ 26). Making reasonable inferences in favor of SCI, the Court does not agree with Stericycle that these allegations are internally inconsistent.

Under the requirements of notice pleading, the amended complaint must provide Stericycle with "fair notice of what the claim is and the grounds upon which it rests." *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (internal quotation marks omitted). It does so for the performance, manner of the breach, damages, and some of the terms of the contract. The amended complaint, however, does not provide crucial information about the existence of any contract between Stericycle and the subsidiaries. For example, it does not sufficiently allege when the contracts were entered into or were operational. *See, e.g., Montgomery v. Scialla*, No. 15-CV-10840, 2017 WL 3720178, at *5 (N.D. Ill. Aug. 29, 2017) (requiring allegations about "when the contract was made" to provide fair notice of a breach of contract claim); *c.f. Loup Logistics Co. v. Windstar, Inc.*, No. 17 C 9045, 2018 WL 5619454, at *2 (N.D. Ill. Oct. 30, 2018) (where multiple contracts are at issue, plaintiff must specify which were breached).

SCI responds that, per Stericycle's class-action settlement in this district, the subsidiaries entered into agreements with Stericycle at some point within a nearly 15-year period between 2003 and 2017. (Dkt. 27 ¶ 59). The settlement is referred to in the complaint and the Court may take judicial notice of it. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). The settlement agreement provides:

> In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Actions, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a

> proceeding to enforce this Agreement or the rights of the Parties or their counsel.

*In Re: Stericycle, Inc.*, No. 1:13-cv-05795, Dkt. 306-1 at 43 (N.D. Ill. Oct. 17, 2017). The plain language of this agreement prevents the use of the agreement or any related statements or court proceedings as evidence in other actions. *See Cannon v. Burge*, 752 F.3d 1079, 1091 (7th Cir. 2014) (interpreting an unambiguous settlement agreement from its plain language). Further, as Stericycle points out, even if documents related to the settlement could be used, many of the subsidiaries were "Not Matched to Class Data," *i.e.* they were not members of the class. *See e.g., In Re: Stericycle, Inc.*, No. 1:13-cv-05795, Dkt. 422 at 77–78 (May 8, 2018).

SCI did not respond to Stericycle's arguments pertaining to the settlement and has pointed to no authority that would allow it to rely on the class settlement to show that it entered into contracts with Stericycle and when. If SCI chooses to amend, it should sufficiently allege, independent of the class settlement, that the subsidiaries entered into agreements with Stericycle. To allow otherwise would "sanction a fishing expedition costing both parties, and the court, valuable time and resources." *Bissessur*, 581 F.3d at 604.

### D. Unjust Enrichment Claim

Finally, Stericycle argues that SCI cannot pursue both a breach of contract and unjust enrichment claim. As currently pled, the unjust enrichment claim incorporates the alleged contract, which is impermissible. See Dkt. 27 ¶ 104 ("... the terms of Defendant's contract falsely conveyed that price increases were the result of operational changes implemented to comply with changes in the law or specific

increases in costs."). "A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is not an express contract, then the defendant is liable for unjustly enriching himself at my expense." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). But a party is not permitted to claim that the defendant "is liable for breaching this express contract but that if it did not breach the contract, then it owes damages for unjust enriching itself." *Id.* Here, SCI has done the latter, and therefore has failed to state a claim for unjust enrichment. Because SCI will be given leave to amend its complaint, it should add sufficient allegations to make clear that its unjust enrichment claim does not presume the existence of an express contract.

## **CONCLUSION**

Stericycle's motion to dismiss is granted. The Court dismisses the amended complaint without prejudice due to SCI's failure to sufficiently plead facts establishing SCI's prudential standing. Further, even assuming SCI has prudential standing, it has failed to state a claim on any count. The Court grants SCI leave to amend its complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: January 4, 2020